UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW BOWSER,

        *Plaintiff,*

v.

PETER WATSON, DAVID SHAVER,
TIMOTHY RYDER, RICHARD
RUSSELL, FREDERICKS HERRO,
LAURIE FRY, CODY CRITES,
BETSY XANELL, GRAND PRAIRIE
HEALTHCARE SERVICES,
WELLPATH LLC, and JOHN DOES
1-5,

        *Defendants.*

_____/

Case No. 2:23-CV-10568

Sean F. Cox
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS FREDERICK HERRO, M.D. AND LAURIE FRY'S, N.P MOTION FOR PARTIAL DISMISSAL (ECF NO. 23) AND MDOC DEFENDANTS' MOTION TO DISMISS (ECF NO. 26)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants

Herro and Fry's Motion to Dismiss be **GRANTED** (ECF No. 23), and MDOC[1]

Defendants' Motion to Dismiss be **GRANTED** (ECF No. 26).

---

[1] The MDOC Defendants identified in the motion to dismiss are Defendants David Shaver, Timothy Ryder, Richard Russell, Cody Crites, and Elizabeth Fanelli. (ECF No. 26, PageID.588). However, Elizabeth Fanelli is not a named defendant in the case and is not mentioned in Plaintiff's complaint. Based on the complaint citations contained in the

If the Report and Recommendation is adopted, Defendants Herro, Fry, Ryder, Shaver, Russell, Crites, and Xanell should be **DISMISSED** from the action **WITHOUT PREJUDICE**.

## II. <u>REPORT</u>

### A. Introduction

Plaintiff Andrew Bowser, former prisoner of the Michigan Department of Corrections ("MDOC"), previously incarcerated at the Parnall Correctional Facility ("SMT"), brought this action alleging violations of his First and Eighth Amendment constitutional rights under 42 U.S.C. § 1983. (ECF No. 3). Specifically, Plaintiff alleges that the medical staff at RGC and SMT failed to provide him with adequate medical treatment to address injuries sustained, and the associated pain, prior to his incarceration. (*Id.* at PageID.243). Plaintiff filed medical kites and grievances seeking assistance to address these inadequacies and alleges that the medical staff and MDOC personnel retaliated against him for doing so. (*Id.*).

---

MDOC Defendants, brief it appears that when both Plaintiff and the MDOC Defendants mention "Elizabeth Fanelli" they are referring to Defendant Betsy Xanell. Further, the MDOC's Defendants' April 25, 2023 and May 1, 2023 Appearances of Counsel identify "Quartermaster Betsy Fanelli" as a party on whose behalf the Attorney General was entering an appearance. (ECF Nos. 4 and 8). For the sake of clarity and accuracy of the record, the undersigned will continue to refer to the defendant in question as "Defendant Betsy Xanell" until a stipulation is entered onto the docket clarifying whether the defendant should be referred to as "Betsy Xanell," "Betsy Fanelli," or "Elizabeth Fanelli."

2

### B.  Factual Background

Plaintiff arrived at the Charles R. Egeler Reception and Guidance Center ("RGC") from the Kent County Jail ("Kent") on July 20, 2021 wearing a walking boot on his left foot following a recent surgery to address several broken bones. (ECF No. 3, PageID.246 ¶¶ 24–25).   He was also on a treatment course of Gabapentin to treat the pain he experienced due to the neuropathy in his left leg and right arm.   (*Id.* at ¶ 26).   Plaintiff's intake form noted that his current painful condition was his left foot, ankle and heel, and there was a notation to consider a wheelchair for distance travel.   (*Id.* at PageID.247 (citing ECF No. 3, PageID.287, 289)).   Plaintiff was then observed by Defendant Fry who recorded the following subjective complaint in the clinical encounter form:

> Left heel pain since [motor-vehicle accident] in 09/2020. He suffered "shattered heel" and compound fx of left fibula.  He underwent surgery in October 2020.  He arrived to RGC with walking boot.  Pain level is 6/10 and aching and sharp.  It is exacerbated by walking it improves with Neurontin.  He last saw Ortho about 1 month ago.  He arrived on Neurontin for "nerve damage."

(*Id.* (citing ECF No. 3, PageID.292)).   Plaintiff immediately began complaining of neuropathic pain and Defendant Fry (i) requested approval for Plaintiff to continue using his walking boot for one month until the external orthopedic records could be reviewed, and (ii) ordered Gabapentin.   (*Id.* at PageID.248 (citing ECF No. 3,

PageID.294)).  The order only provided for a 12-day supply of the medication with gradually decreasing dosage.  (*Id.* at PageID.248).

Less than a week later, Plaintiff began submitting kites regarding his neuropathy.  (*Id.*).  On July 28, 2021, Defendant Fry entered an administrative note into Plaintiff's file explaining that the provider received a notification from one of the nurses that Plaintiff needed more Neurontin[2] to control his pain, that Plaintiff was advised during a prior visit he was being weaned off of Neurontin, and that there would be no change to his treatment plan.  (*Id.* at PageID.248–49).  The next day, Defendant Fry received and reviewed Plaintiff's orthopedic medical records and Plaintiff's Gabapentin treatment was discontinued in early August 2021.  (*Id.* at PageID.249 (citing ECF No. 3, PageID.332, 334)).  He continued to send kites complaining of increasing pain as the dosage of Gabapentin decreased.  (*Id.* at PageID.249 (citing ECF No. 3, PageID.318–26)).

Plaintiff was then observed by Defendant Fry who advised him that per his orthopedic specialist "he is to be full weight bearing, wean from walking boot to regular shoe and [take] APAP for pain."  (*Id.* at PageID.249 (citing ECF No. 3, PageID.334)).  Plaintiff was advised of the treatment plan and expressed his discontent because his orthopedic specialist "was not 'weaning' [him] off of the

---

[2] Neurontin is the brand name for Gabapentin. Gabapentin: Uses, Dosage, Side Effects, Warnings, https://www.drugs.com/gabapentin.html (last visited Dec. 13, 2023).

Gabapentin," and in fact instructed Plaintiff "to follow up with a pain management specialist to address his neuropathy." (*Id.* at PageID.249 ¶¶ 40–41).

Prior to being incarcerated at Kent, Plaintiff had an appointment with the Javery Pain Clinic, and continued to receive Gabapentin for his neuropathy during his incarceration. (*Id.* at PageID.250 ¶¶ 42–43). Defendant Fry allegedly ignored this information and denied Plaintiff Gabapentin. (*Id.* at PageID.250 ¶ 44). He subsequently requested to be transferred to another provider because Defendant Fry refused to treat his neuropathy, but the request was denied. (*Id.* at PageID.250 ¶¶ 45–46). On August 25, 2021, Plaintiff was transferred from RGC to SMT. (*Id.* at PageID.250 ¶ 47).

In September 2021, Plaintiff was seen by Defendant Watson who noted that he reported "painful neuropathy" radiating into his right arm and hand, and left leg and foot. (*Id.* at PageID.251). The notes went on to reflect Plaintiff's complaints of pain, his frustration at being told he was transitioning from his walking boot to state issued shoes, and the fact that the state issued shoes had not been ordered. (*Id.* (citing ECF No. 3, PageID.340)). Following this meeting, Defendant Watson sought approval for Plaintiff to continue wearing his walking boot and an EMG of his lower

extremities.  (*Id.* (citing ECF No. 3, PageID.341–42)).  The walking boot request was denied[3], and the EMG request approved.  (*Id.* (citing ECF No. 3, PageID.345)).

From late September 2021 to October 2021, Plaintiff's records show that he complained of experiencing pain, sensed that a surgery screw had become dislodged from his heel, he was observed limping while favoring his left foot, and his state issued shoes had not been ordered.  (*Id.* at PageID.252–53 (citing ECF No. 3, PageID.349, 351, 356)).  Plaintiff was given crutches and an Xray was ordered which revealed that a screw in his left heel was not "well seated."  (*Id.* at PageID.253 (citing ECF No. 3, PageID.356)).  In November 2021, Plaintiff's record was updated to reflect that he was scheduled for a CT-scan of his left foot in February 2022, he received taller crutches following complaints of his crutches "digging into his side," and could use his crutches until the first "snowfall" but would be provided a wheelchair for distance travel.  (*Id.* at PageID.253–54 (citing ECF No. 3, PageID.358, 360, 362)).  However, even after the first snowfall Plaintiff did not receive the wheelchair and was observed by medical personnel using crutches in the snow.  (*Id.* at PageID.254 (citing ECF No. 3, PageID.364)).  Around this time, Plaintiff submitted kites complaining of pain related to his prolonged use of crutches.  (*Id.* at PageID.254).

---

[3] During the period when Plaintiff had not yet received the tennis shoes, he was forced to wear bathroom slippers even during the winter season.  (*Id.* at PageID.252 ¶ 52).

Plaintiff's records reflect that in December 2021 and January 2022, he continued to request a wheelchair but was denied, and in January 2022 Defendant Watson's notes indicate that the crutches were for comfort only and not safety purposes, and thus, weather permitting, Plaintiff was able to fully weight bear. (*Id.* at PageID.255–56 (citing ECF No. 3, PageID.371, 373)). In early February 2022, Defendant Watson provided Plaintiff with a wheelchair but directed him to use it sparingly. (*Id.* at PageID.257 (citing ECF No. 3, PageID.378)).

In February 2022, Defendant Herro entered an administrative note which indicated Plaintiff was still experiencing foot pain and the issue would be addressed during his upcoming follow up appointment. (*Id.* at PageID.256 (citing ECF No. 3, PageID.375)). The next month, Plaintiff attended a chronic care consultation with Defendant Herro. (*Id.* at PageID.258 (citing ECF No. 3, PageID.388)). Defendant Herro's notes indicate that during the consultation Plaintiff complained of pain in his left heel but do not contain any reference to Plaintiff's neuropathy or his pending EMG although he allegedly told Plaintiff to inform the medical staff at his upcoming EMG about his right arm. (*Id.*). Further, Defendant failed to propose any treatment plan for Plaintiff. (*Id.* at PageID.259 (citing ECF No. 3, PageID.389)).

Almost a year after arriving at SMT, Plaintiff finally underwent an EMG on his left foot and the doctor's treatment notes indicated that Plaintiff's left foot was "quite deformed, somewhat edematous." (*Id.* (citing ECF No. 3, PageID.396)). He

7

finally received properly fitting shoes, and following additional radiographic imaging, surgery was recommended.  (*Id.* at 259–60).

In August 2022, Plaintiff began receiving Gabapentin again to treat his neuropathy, but was denied the medication for approximately four days in late September.  (*Id.* at PageID.260).  Over the course of his treatment, neither Defendant Watson nor Herro completed the subjective portion of the medical records related to Plaintiff's pain levels.  (*Id.*).  However, in some instances the questions that would have been addressed in the subjective portion were answered in the "narrative portion of the 'Subjective' section" of Plaintiff's medical records.  (*Id.* at PageID.261).

Over the course of his tenure at SMT, Plaintiff submitted multiple grievances regarding the inadequate medical treatment he received, but all of his grievances were either denied or rejected.  (*Id.* at PageID.263 ¶ 113).  Allegedly, Defendant Ryder rejected Plaintiff's grievances because of his "personal prejudices" against Plaintiff.  (*Id.* at PageID.263, ¶ 115).  For example, Defendant Ryder rejected a grievance filed by Plaintiff in June 2022 "regarding the extreme pain he was in as a result of the lack of medical treatment."  (*Id.* at PageID.264 (citing ECF No. 3, PageID.405)).  Defendant Ryder's reason for rejecting the grievance was because Plaintiff was on modified access from February 24, 2022 to June 24, 2022, and Plaintiff failed to follow protocol by submitting the grievance without authorization

from the grievance coordinator.  (*Id.*).  Thus, the grievance was rejected for a procedural error.  (*Id.* at PageID.264 ¶¶ 121–22).  But Plaintiff alleges the grievance was filed the day after he was removed from modified access, and as such he was not required to receive authorization.  (*Id.* at PageID.264 ¶ 122).  Plaintiff appealed the rejection but Defendant Shaver, at Step II, and Defendant Russell, at Step III, both affirmed the rejection.  (*Id.* at PageID.264 at ¶¶ 124–25).  Plaintiff allegedly experienced a number of these instances where meritorious grievances were rejected.  (*Id.* at PageID.265–68 at ¶¶ 127–44).

Plaintiff also alleges that he was inappropriately written up for misconduct. In October and November 2022, Defendant Crites issued Plaintiff Class II Misconduct write ups for sending medical kites.  (*Id.* at PageID.268–69 ¶¶ 145–52). There were also instances of medical staff responding inappropriately or making comments towards Plaintiff when he attempted to obtain medical assistance or have his medical kites addressed.  (*Id.* at PageID.269–70 ¶¶ 157–59).

Last, Plaintiff also alleges that Defendant Xanell failed to order a pair of shoes for him in a timely fashion.  (*Id.* at PageID.275 ¶ 186–89).  This resulted in Plaintiff ambulating throughout the facility without a left shoe for almost a year.  (*Id.* at PageID.275 ¶ 190).  In early June 2022, Defendant Xanell presented Plaintiff with an ill-fitting pair of shoes which he rejected.  (*Id.* at PageID.280 ¶¶ 217–19).  A few days later he filed a grievance against Defendant Xanell for violating his rights

and/or MDOC policies by failing to provide him with properly fitted shoes. (*Id.* at PageID.280 ¶ 221). He was then subjected to a retaliatory search of his cell. (*Id.* at PageID.271). Plaintiff alleges Defendant Xanell instructed Corrections Officer Nicholson to search his cell for the shoes he rejected days prior. (*Id.* at PageID.271 ¶¶ 164–66). Plaintiff alleges this search was inappropriate because Defendant Xanell knew the shoes were not in his cell before she ordered it to be searched. (*Id.* at PageID.271 ¶ 166).

Plaintiff commenced this action on March 10, 2023 and filed an amended complaint on March 27, 2023. (ECF Nos. 1 and 3). Defendants Herro and Fry filed a motion to dismiss pursuant to Fed. R. Civ. P. 8(A)(2) and 12(B)(6) on July 11, 2023 (ECF No. 23), and the MDOC Defendants filed a motion to dismiss on July 19, 2023 (ECF No. 26). Both motions are fully briefed.

## C. Standard of Review

Under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere

10

labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265. 286 (1986)). The requirement to provide a claim does not require that a claim be "probable"; however, a claim must be more than merely conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

### D. Analysis

#### 1. Defendants Herro and Fry's Motion to Dismiss

Plaintiff argues Defendant Herro violated his Eighth Amendment rights by failing to provide him with adequate medical treatment for the hardware failure and unhealed fractures in his ankle, and the pain associated with those conditions.[4] (ECF No. 3, PageID.274). As to Defendant Fry, Plaintiff argues she violated his Eighth Amendment right by discontinuing his Gabapentin treatment for his neuropathy and ignoring his complaints of increasing pain. (*Id.* at PageID.273). And thus, Defendants Herro and Fry's failure to provide adequate medical treatment caused Plaintiff to endure significant and unnecessary pain and suffering. (*Id.* at PageID.273, 274).

---

[4] Plaintiff's complaint provides that Defendant Herro's inadequate medical treatment comprised of his failure to provide him with a wheelchair, directing him to walk on his ankle as much as possible, failing to provide him with an EMG until June 2022 or Gabapentin until August 2022, and failing to educate him on the proper use of crutches, amongst other things. (ECF No. 3, PageID.274).

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). And prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

The subjective element of a deliberate indifference claim requires a plaintiff to demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." *Comstock*, 273 F.3d at 703. Indeed, the plaintiff must establish that "prison officials have a sufficiently culpable state of mind in denying medical care." *Jones v. Muskegon Cnty.*, 625 F.3d 935, (6th Cir. 2010). A culpable state of mind requires obduracy and wantonness, not mere inadvertence. *Gibson v. Foltz*, 923 F.2d 851, 853 (6th Cir. 1992). A plaintiff need not show that an official acted with the purpose or knowledge of causing harm; recklessness in disregarding a substantial risk will suffice. *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835)

(holding that official must know of and disregard an excessive risk to inmate health or safety)).  In essence, deliberate indifference can be established by a plaintiff demonstrating that medical care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001)).

The objective element of a deliberate indifference claim may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment.  *Estelle*, 429 U.S. at 103–04.  However, in instances where a prisoner "has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff's allegations and the accompanying medical notes satisfy the objective component of deliberate indifference as they show that Plaintiff's injury was well documented and serious enough to warrant an order of pain medication during his tenure at SMT.  (*See*, *e.g.*, ECF No. 3, PageID.248–49, 292, 294, 345, 349, 351, 356).  However, the undersigned finds that Plaintiff's complaint does not contain sufficient allegations to satisfy the subjective component as to Defendants Herro and Fry.

Defendant Herro argues that Plaintiff's complaint fails to demonstrate that he consciously disregarded his medical needs and in fact shows that "Plaintiff's medical conditions were being actively worked up and treated." (ECF No. 23, PageID.580). Further, Plaintiff's main complaints appear to center on Defendant Herro's medical charting practices. (*Id.*). The undersigned finds Defendant Herro's arguments persuasive.

Plaintiff's allegations regarding Defendant Herro fail to support a plausible claim that Dr. Herro was deliberately indifferent to his serious medical needs. First, Plaintiff's allegations do not show Defendant Herro's involvement in the (i) decision not to provide him with a wheelchair, (ii) decision not to provide Gabapentin for his neuropathy, or (iii) delay in scheduling Plaintiff's EMG. (ECF No. 3, PageID.255, 256, 369, 375, 388). Instead, what the complaint shows is Plaintiff's attempt to attach these allegations, which are more so related to the actions allegedly undertaken by Defendants Watson and Fry, to Defendant Herro. This tactic is not only improper but also unpersuasive. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (To state a claim under § 1983, a "plaintiff must allege facts, not simply conclusions, that show than an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Minion v. Lindsey*, 4:19-CV-P95-JHM, 2019 WL 4675391, at *3 (W.D.

14

Ky. Sept. 25, 2019) (dismissing the deliberate indifference claim as to certain defendants as the specific facts did not show how they were personally responsible for plaintiff's alleged injuries).   Once these allegations are removed from the equation, those left standing in sum relate to Defendant Herro's charting practices. However, Plaintiff's own complaint undermines this argument as it acknowledges that the information he alleged should have been included in his records, in fact was in "certain instances."  (ECF No. 3, PageID.261 ¶ 98).

Defendant Herro's actions of reviewing Plaintiff's record, meeting with him, electing not to alter his treatment plan following his visit, and advising him to inform the technicians who perform his EMG of his pain all appear aboveboard and in line with the administration of adequate medical treatment in light of the length of their patient-doctor relationship, the information included in the medical record, and the treatment notes.  Plaintiff's claim against Defendant Herro amounts to nothing more than a disagreement with his treatment decisions which does not give rise to an Eighth Amendment violation.  *Jennings v. Al-Dabagh*, 275 F. Supp. 2d 863, 870 (E.D. Mich. 2003) ("[T]he fact that a prisoner disagrees with a course of treatment that he was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation.").

Plaintiff's main allegation against Defendant Fry is that she violated his Eighth Amendment rights by discontinuing his Gabapentin treatment for his

neuropathy and ignoring his complaints of increasing pain.   (ECF No. 3, PageID.273).  Plaintiff argues this decision was made by Defendant Fry, following her review of his orthopedic records, based on the incorrect conclusion that his orthopedic specialist was weaning him off of Gabapentin when in fact he was instructed "to follow up with a pain management specialist to address his neuropathy."   (*Id.* at PageID.249 ¶¶ 40–41).   Plaintiff argues Defendant Fry's decision to do this was incorrect as she was aware that prior to Plaintiff's incarceration at Kent, he had an appointment with the Javery Pain Clinic, and continued to receive Gabapentin for his neuropathy during his incarceration and yet she still denied him the medication upon his admittance to SMT.  (*Id.* at PageID.250 ¶¶ 42–44).  In sum, here again, Plaintiff's allegations as to Defendant Fry amount to nothing more than a disagreement in a treating decision and the complaint allegations demonstrate as much.

First, upon his initial arrival at RGC, Defendant Fry ordered Plaintiff a course of Gabapentin, albeit with the direction to decrease dosage over time, while awaiting receipt of his orthopedic records.  (ECF No. 3 at PageID.248 (citing ECF No. 3, PageID.294)).  Only after reviewing his records and taking heed of the notation that Plaintiff was to be provided acetaminophen for pain did Defendant Fry adjust his treatment course accordingly.  (*Id.* at PageID.249 (citing ECF No. 3, PageID.332, 334)).  Second, Plaintiff alleges Defendant Fry was aware of his appointment with

16

the Javery Pain Clinic and his ongoing Gabapentin treatment course at Kent, but this is nothing more than a conclusory statement unsupported by any factual allegations that Defendant Fry was provided this information by Plaintiff during a medical visit, became aware of this fact from Plaintiff's medical records, or received these details in any other fashion.  Plaintiff's cause of action against Defendant Fry amounts to nothing more than a disagreement with the course of treatment which does not establish that Defendant acted wantonly or with the subjective intent to cause him harm.  Thus, he fails to state a colorable deliberate indifference claim.  *Graham ex. Rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."); *Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008); *Jennings*, 275 F. Supp. 2d at 870.

In fact, the complaint is filled with facts demonstrating that Defendant Fry did not disregard his medical condition and instead undertook measures to assist him. Defendant Fry noted Plaintiff's complaint of experiencing pain, initially prescribed him Gabapentin while awaiting his orthopedic records, and after reviewing the records advised him that his orthopedic surgeon advised that he take acetaminophen

for the pain before adjusting his treatment plan accordingly.  (*Id.* at PageID.249 (citing ECF No. 3, PageID.334)).

Based on the information contained in Plaintiff's complaint, he has failed to allege facts sufficient to support the subjective component of deliberate indifference for either Defendant Herro or Fry.  Thus, I **RECOMMEND** their motion to dismiss be **GRANTED** and both defendants be **DISMISSED** from the action.

### 2.  MDOC Defendants' Motion to Dismiss

Plaintiff alleges that in retaliation for the grievances and medical kites he filed, Defendants Ryder, Russell, and Shaver denied his grievances; Defendant Crites issued unfounded Misconduct write ups; and Defendant Xanell delayed ordering properly fitted shoes and eventually ordered a baseless search of his cell.  The MDOC Defendants filed a motion to dismiss arguing (i) the alleged conduct of Defendants Ryder, Shaver, and Russell is insufficient to state valid § 1983 claims, (ii) Plaintiff fails to allege sufficient facts to show valid retaliation claims against any of the MDOC defendants, (iii) Plaintiff fails to present any medical evidence to support his claim that Defendant Xanell was objectively deliberately indifferent, and (iv) Plaintiff alleges conduct that is not clearly established as unconstitutional and thus Defendants Ryder, Shaver, Russell, and Crites are entitled to qualified immunity.  (ECF No. 26, PageID.604).

First, the main question at bar is whether Plaintiff alleges sufficient facts in the complaint, when taken liberally, to state a First Amendment retaliation claim as to each of the MDOC Defendants.  To state a First Amendment retaliation claim a plaintiff must plausibly allege: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999).  An adverse action is defined as one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Bell*, 308 F.3d at 606) (emphasis in original).  To satisfy the third prong of causation, a plaintiff must allege "that his protected conduct was a motivating factor" for the retaliatory acts. *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399).  A plaintiff may rely on circumstantial evidence, but must still provide "specific, nonconclusory allegations" linking his conduct to the defendants' retaliatory acts. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012).  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

An inmate has a First Amendment right to file grievances against prison officials, but only if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's grievances appeared to be a combination of requesting assistance while voicing frustration with the delay in or quality of the assistance provided. (*See, e.g.*, ECF No. 3, PageID.438). The inclusion of the latter does not automatically render the entire grievance frivolous and thus the undersigned finds that Plaintiff was engaged in protected conduct. The reason for the rejection (i.e., the grievance was filed in an untimely matter) does not undermine or contradict this finding. (*Id.* at PageID.438). Thus, Plaintiff has satisfied the first element of a First Amendment retaliation claim.

Next, Plaintiff must show that there was adverse action taken against him that would deter a person of ordinary firmness from continuing to engage in the protected conduct as to each individual MDOC defendant. First, we turn to Defendant Ryder. Plaintiff alleges the following:

> Defendant Ryder began denying or rejecting Mr. Bowser's grievances, not on the merits or policy, but because of Defendant Ryder's personal prejudices against Mr. Bowser. (ECF No. 3 at PageID.263 ¶ 115).

> In sum, Defendant Ryder began a systematic process of improperly rejecting Mr. Bowser's grievances in an effort to stop Mr. Bowser from seeking constitutional conditions of confinement and Defendants Shaver and Russell explicitly approved of Defendant Ryder's actions. (*Id.* at PageID.268 ¶ 144).

> In response to the numerous grievances Mr. Browser filed in an attempt to address the deliberate indifference to his serious medical needs, Defendant Ryder began rejecting Mr. Browser's grievances for no reason other than to punish him for filing grievances.  (*Id.* at PageID.279 ¶ 211).

> Mr. Ryder's intent was to stop Mr. Bowser from filing grievances by demonstrating that they would not improve his circumstances.  (*Id.* at PageID.279 ¶ 212).

While these allegations demonstrate that action was taken on Defendant Ryder's part, it does not show that the acts deterred Plaintiff from continuing to file grievances as demonstrated by the grievance filed by Plaintiff on June 25, 2022.  (*Id.* at PageID.264 (citing ECF No. 3, PageID.405)).  Further, given the facts at hand Defendant Ryder's actions would not deter an ordinary person of reasonable firmness from continuing to file legitimate grievances seeking assistance to address a medical concern.  Thus, Plaintiff has failed to satisfy the second element of his First Amendment retaliation claim.  *Walker v. Michigan Dept. of Corr.*, 128 F. App'x 441 (6th Cir. Apr. 1, 2005).  Even if Plaintiff could satisfy the second element, his complaint fails to state allegations which would establish "a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X*, 175 F.3d at 395.  Notably, aside from conclusory statements, Plaintiff's complaint is silent as to factual allegations which would establish a causal connection between his protected conduct and the alleged action.  There are no factual allegations explaining what "personal

21

prejudices" Defendant Ryder held against Plaintiff, where they originated from, what was the catalyst, if any, that prompted the "personal prejudices," or approximately when the behavior or practice of rejecting the grievances began, if Defendant Ryder communicated his "personal prejudices" to Plaintiff, voiced his frustrations with the volume of grievances filed by Plaintiff, or any other facts that would show a casual connection. *Colvin v. Horton*, 2:19-cv-122, 2019 WL 3927425, at *12 (W.D. Mich. Aug. 20, 2019).   As the adage goes, correlation is not synonymous with causation and this scenario appears to give life to this saying.

Further, being placed on modified access does not constitute an adverse action as it did not preclude Plaintiff from filing any grievances.  It merely required that he submit a request to the grievance coordinator to obtain the form to submit the grievance.  This process permitted Defendant Ryder to assess, prior to Plaintiff filing the grievance, whether the actions complained of were grievable, non-frivolous and non-duplicative.  It did not completely preclude or prohibit Plaintiff from filing additional grievances.  Moreover, the facts show that Plaintiff was not deterred from continuing to engage in the protected conduct because he continued to attempt to file grievances. *Davis v. Martin*, 52 F. App'x 717 (2002) (Plaintiff failed to show that adverse action had been taken against him as his placement on "modified grievance access only ensured that he would file grievances that complied with prison

22

regulations, thus allowing him to engage in the precise conduct which he alleged he wished to pursue.")

Next, I turn to Defendants Shaver and Russell.  Plaintiff's allegations as to these defendants are based on their affirmation of Defendant Ryder's denial of Plaintiff's grievance, nothing more.  (ECF No. 3, PageID.265–67 ¶¶ 124, 125, 132, 138).  Plaintiff alleges the following:

> In sum, Defendant Ryder began a systematic process of improperly rejecting Mr. Bowser's grievances in an effort to stop Mr. Bowser from seeking constitutional conditions of confinement and Defendants Shaver and Russell explicitly approved of Defendant Ryder's actions.  (*Id.* at PageID.268 ¶ 144).

> The retaliatory rejection of Mr. Browser's grievances was explicitly approved by Defendants Shaver and Russell.  (*Id.* at PageID.279 ¶ 213).

Section 1983 liability may not be imposed simply because an official denied an administrative grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Further, "[n]umerous courts have held that denial or refusal to process a grievance is not adverse action."  *Colvin*, 2019 WL 3927425 at *12 (collecting cases).  Thus, the allegations against Defendants Shaver and Russell, which are even thinner than those lodged against Defendant Ryder, are insufficient to demonstrate that either took adverse action against Plaintiff.  Further, Plaintiff actions demonstrate that the actions taken by Defendants Shaver and Russell did not deter him from continuing

23

to partake in the protected action and thus he has failed to proffer sufficient allegations to rase a valid First Amendment retaliation claim against them.

More importantly, Plaintiff has failed to provide any allegations suggesting what the improper motivation behind the Step II and Step III confirmations of Defendant Ryder's grievance decisions could be. *See id.* (finding plaintiff failed to state a claim because he did not present any facts to support his conclusion that defendants retaliated against him for filing a grievance against another officer). There are no allegations to show that either defendant was aware of the volume of grievances filed by Plaintiff or that Defendant Ryder advised them as much. The complaint, even when reviewed liberally, does not demonstrate any retaliatory motivation behind the actions of Defendants Shaver and Russell. The complaint merely shows that the defendants agreed with Defendant Ryder's rationale for rejecting the grievance based on MDOC policy and affirmed the rulings accordingly. Thus, the allegations as to Defendants Shaver and Russell are not adequately pled and Plaintiff has failed to raise a First Amendment retaliation claim against them.

Next, I turn to the allegations lodged against Defendant Crites which Plaintiff proffers are related to his act of writing up Class II Misconducts in retaliation for Plaintiff submitting medical kites. (ECF No. 3, PageID.269 ¶¶ 215). The crux of the allegations are as follows:

> On October 5, 2022, Defendant Crites wrote Mr. Browser a Class II Misconduct for sending medical kites, charging

24

> Mr. Browser for Destruction or Misuse of Property, Insolence. (*Id.* at PageID.268 ¶ 145).
>
> On November 20, 2022, Defendant Crites again wrote Mr. Bowser a Class II misconduct for sending medical kites. (*Id.* at PageID.269 ¶¶ 151).
>
> Defendant Crites' retaliatory conduct on behalf of the medical staff at SMT is more apparent when considering the responses to some of Mr. Bowser's medical kites. (*Id.* at PageID.269 ¶¶ 153).
>
> Defendant Crites also retaliated against Mr. Bowser for filing medical kites seeking treatment for his medical conditions. (*Id.* at PageID.279 ¶¶ 214).

The claims raised against Defendant Crites suffer from the same ailment as those raised against Defendants Shaver and Russell—failure to satisfy elements two and three of the First Amendment retaliation claim test. *Thaddeus-X*, 175 F.3d at 395. The allegations raised in Plaintiff's complaint do not demonstrate that Defendant Crites's action deterred him from continuing to file medical kites and more importantly the allegations do not demonstrate that Defendant Crites wrote the misconduct slips in retaliation for Plaintiff writing the medical kites. It is important to note that stating someone committed an act in retaliation is nothing more than a conclusory statement. Examples of a factual allegation to support such a statement would include overhearing statements where a defendant admits the act was conducted in retaliation, negative statements made about the protected acts plaintiff takes part in, or another act along these lines. *Colvin*, 2019 WL 3927425 at *12.

But the court needs more than just a conclusory statement to find that a party has satisfied element three. *Spencer*, 506 F. App'x at 396 (While a plaintiff may rely on circumstantial evidence, they must still provide "specific, nonconclusory allegations" linking his conduct to the defendants' retaliatory acts); *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538–39). Thus, the allegations as to Defendant Crites are not adequately pled and Plaintiff has failed to raise a First Amendment retaliation claim against him.

Last, I turn to the allegations raised against Defendant Xanell. As to Defendant Xanell, Plaintiff alleges that she violated both his First and Eighth Amendment rights. She violated his Eighth Amendment right by failing to provide him with properly fitted shoes in a timely fashion, and First Amendment right when she Officer Nicholson to search Plaintiff's cell without a legitimate basis. The crux of the Eighth Amendment constitutional violation allegations are as follows:

> Defendant Betsy Xanell was deliberately indifferent to Mr. Bowser's serious medical needs by failing to order the proper shoes for him. (ECF No. 3, PageID.275 ¶ 186)

> On numerous occasions Defendant Betsy Xanell was informed by SMT medical staff that Mr. Bowser required specially ordered shoes. (*Id.* at ¶ 187).

> Despite knowing that Mr. Bowser required shoes to be specially ordered, Betsy Xanell failed to order Mr. Bowser shoes until July 2022. (*Id.* at ¶ 189).

> Mr. Bowser suffered physical injury in the form of increasing numbness on his foot due to it being dragged

26

on the ground without a shoe over the many months while
he was using crutches.  (*Id.* at ¶ 191).

Based on these allegations, Plaintiff has failed to state an Eighth Amendment
deliberate indifference claim as the facts alleged fall "far short of establishing that
the treatment he received was 'so woefully inadequate as to amount to no treatment
at all.'"  *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *3 (6th Cir. May 23,
2018) (finding that in light of the other forms of treatment plaintiff received, his
complaint of not receiving the request tennis shoes did not support his overall
allegations that the defendants ignored his complaints, and his allegations amounted
to nothing more than a disagreement with the treatment he received); *Belser v. Alton*,
No. 15-2024, 2016 WL 11848552, at *3 (6th Cir. Oct. 4, 2016); *Vandiver v. Corr.
Med. Serv., Inc.*, No. 05-CV-72835-DT, 2006 WL 2516902, at *4 (E.D. Mich. Aug.
29, 2006).  The complaint shows that Plaintiff was provided treatment for his foot
during his tenure at SMT in the form of medication, crutches, a walking boot, and a
wheelchair amongst other things.  (ECF No. 3, PageID.248, 253, 257).  While he did
not receive properly fitted state issued shoes within the timeframe he would have
liked, he did receive other medical treatment and footwear in the interim.  Thus, the
allegations outlined in Plaintiff's complaint fail to sufficiently allege an Eighth
Amendment deliberate indifference claim as to Defendant Xanell.

The crux of the First Amendment retaliation claim allegations are as follows:

27

> Two days after filing his Step I grievance, Defendant Xanell ordered Corrections Officer Nicholson to search Mr. Bowser's cell for the shoes he had rejected." (ECF No. 3, PageID.271 ¶¶ 164)
>
> Mr. Bowser learned the basis for the search when Defendant Xanell told Resident Unit Manager McDaniel's that she had told Officer Nicholson to search Mr. Bowser's cell for the shoes. (*Id.* at PageID.271 ¶¶ 165).
>
> Defendant Xanell knew the shoes were not in Mr. Browser's cell or in his possession because Mr. Bowser had rejected the shoes for not fitting only a few days before yet still ordered Mr. Bowser's cell to be searched for them. (*Id.* at PageID.271 ¶¶ 166).

Like the other defendants, in this instance Plaintiff has not raised sufficient allegations against Defendant Xanell to satisfy element two of a First Amendment retaliation claim and demonstrate that the search of his cell constitutes adverse action. *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (A single cell search, alone, typically does not amount to an adverse action); *Cook v. Cashler*, 1:11-cv-637, 2013 WL 1213678, at *4 (W.D. Mich. Mar. 5, 2013) ("Cell searches are a routine necessity of prison life and are conducted for the safety of prisoners and prison employees. Thus, cell 'shakedowns,' without significantly more, are not actions that would deter a person of ordinary firmness."); *Jackson v. Berean*, Case No. 1:18-cv-1075, 2019 WL 1253196, at *10 (W.D. Mich. Mar. 19, 2019) (Even if some cell searches may qualify as adverse actions, especially in instances when a prisoner's property is taken, a simple search without the taking of property is

unlikely to be deemed adverse action); *Salahuddin v. Mead*, No. 95 Civ. 8581 (MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (a retaliatory cell search is insufficient to support a First Amendment retaliation claim). Again, he does not state that the actions taken by Defendant Xanell led him to stop filing grievances or kites.  In fact, his complaint demonstrates otherwise.  (ECF No. 3, PageID.302–03).

Based on the information contained in Plaintiff's complaint, he has not alleged facts sufficient to support either his Eighth Amendment  or First Amendment claims as to Defendant Xanell.

### C.    Conclusion

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants Herro and Fry's motion to dismiss for failure to state a claim, and **GRANT** the MDOC Defendants' motion to dismiss.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 20, 2023

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

30